UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
:  
CLINTON I. PITTMAN JR. and CLINTON I. PITTMAN :   14-CV-4140 (ARR) (RLM)
III, :
:   NOT FOR ELECTRONIC
Plaintiffs, :   OR PRINT PUBLICATION
:
-against- :   OPINION & ORDER
:
CITY of NEW YORK, et al., :
:
Defendants. :
:
------------------------------------------------------------------------- X

ROSS, United States District Judge:

  Plaintiffs, Clinton I. Pittman, Jr. ("Pittman Jr."), and his son, Clinton I. Pittman, III ("Pittman III"), bring this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 against the City of New York (the "City"); former Mayor Michael Bloomberg; former New York Police Department ("NYPD") Commissioner Ray Kelly; NYPD Information Technology Officers John Does 1-2; NYPD Deputy Inspectors John Cappelmann and Thomas J. Connolly of the 103rd and 48th Precincts, respectively; NYPD Captains, Lieutenants, and Sergeants John Does 1-8 of the 103rd and 48th Precincts; and NYPD Radio Motor Patrol Officers John Does 1-8 (collectively, "New York City defendants"); and Nassau County and John Doe Officers of the Nassau County Police Department (collectively, "Nassau defendants"). Plaintiffs allege that defendants violated their constitutional rights during a December 16, 2011 traffic stop that was conducted based on outdated police records indicating Pittman Jr. was driving a stolen car. New York City defendants assert numerous grounds for dismissing the action under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted and the

amended complaint is dismissed in its entirety.[1]

## BACKGROUND

The following facts are drawn from the amended complaint ("Am. Compl."), filed September 23, 2014. Dkt. #7. Plaintiffs, Clinton Pittman, Jr. and his eleven-year-old son Clinton Pittman, III, are residents of New York. Am. Compl., ¶¶ 3, 19. On September 26, 2011, Pittman Jr. went to the NYPD 103rd Precinct to report his car stolen. Id., ¶ 14. Unidentified officers at the precinct input the record into the NYPD's electronic database of stolen vehicles. Id. The next day, officers from the NYPD 48th Precinct contacted Pittman Jr. and informed him that his vehicle had been found. Id., ¶ 15. On September 29, 2011, Pittman Jr. went to the 48th Precinct to recover his car, id., but did not receive any instructions or information regarding whether his car would be removed from the electronic database of stolen vehicles, id., ¶ 16.

On December 16, 2011, at approximately 11:30 p.m., Pittman Jr. was driving his car on the Van Wyck Service Road in Queens, New York, id., ¶ 17, with Pittman III riding in the back right seat of the car, id., ¶ 19. Pittman Jr. noticed an unmarked police vehicle following him for several minutes, id., ¶ 17; that vehicle then "accelerated and swerved in front of [Pittman Jr.'s] vehicle," cutting him off at an intersection, id., ¶ 18. Two Nassau County marked police vehicles

---

[1] Movants seek dismissal of plaintiffs' claims only as against defendants New York City, Bloomberg, Kelly, Cappelmann, and Connolly; the John Doe NYPD officers are not yet represented, and it appears that the Nassau defendants have not yet been served with the summons and amended complaint. "[B]ecause Plaintiffs' claims against [the unserved Nassau County and John Doe New York City] defendants suffer from the same deficiencies as against [the moving New York City defendants], the Court will treat the instant motion [to dismiss] as if it were brought on behalf of all defendants." Salvani v. ADVFN PLC, No. 13 Civ. 7082, 2014 WL 4828101, at *4, n.2 (S.D.N.Y. Sept. 23, 2014); see also Lozada v. City of New York, No. 12-CV-38, 2013 WL 3934998, at *1, n.1 (E.D.N.Y. July 29, 2013) ("Although Corporation Counsel purports to represent only the City and moves for judgment on the pleadings on behalf of only the City, by arguing for dismissal of the claims that are brought solely against the Doe defendants, he has effectively appeared for the Doe defendants as well. The Court therefore treats the pending motion as having been brought by all defendants."); Maier v. NYPD, No. 08-CV-5104, 2009 WL 2915211, at *1, n.1 (E.D.N.Y. Sept. 1, 2009) ("Although the motion [to dismiss] was filed by the Corporation Counsel ostensibly on behalf of the NYPD, the Court notes that the City of New York is obligated to defend and indemnify employees of city agencies pursuant to N.Y. Gen. Mun. Law § 50–k(2). Insofar as the NYPD, through the Corporation Counsel, has made arguments applicable to other [individual] defendants, the Court has considered them as a basis for dismissing claims against such defendants.").

arrived seconds later and pulled up on either side of plaintiff's car, and a fourth police car pulled up behind plaintiff's car, surrounding it completely.[2] Id. The officers got out of their cars "with their guns drawn and pointed at [plaintiffs]," and "proceeded to yell expletives and commands" at Pittman Jr., telling him "not to move and to keep his hands on his steering wheel." Id., ¶ 19. One of the officers removed Pittman III from the vehicle and placed him in one of the marked police cars. Id., ¶ 20. The officers, guns still drawn, demanded that Pittman Jr. exit the car and stand beside it, and proceeded to "harassingly interrogate[] [him] about his ownership and control of the vehicle." Id., ¶ 21. Pittman Jr. "[r]ealize[d] the . . . interrogation was related to the fact that [his] vehicle was stolen three months prior . . . [and] voluntarily supplied his license and registration to the officers, . . . inform[ing] the officers that . . . he [was] the true owner of his vehicle." Id., ¶ 22. The officers ultimately realized that the vehicle, registered in Pittman Jr.'s name, was no longer stolen, despite being listed as such in the electronic database of stolen vehicle records. Id., ¶ 23. Roughly thirty minutes after the stop began, officers permitted the plaintiffs to leave the scene in the car. Id. Plaintiffs allege that they "have suffered and continue to suffer substantial mental and emotional harm and injury" from the stop, id., ¶ 24; Pittman Jr. alleges that he has incurred loss of work, and both Pittman Jr. and Pittman III have required psychiatric counseling, id., ¶ 25.

On July 3, 2014, plaintiffs brought this suit alleging that defendants wrongfully detained them after failing to remove the stolen vehicle record from the NYPD's electronic database. Compl., Dkt. #1. The original complaint was brought only against the New York City defendants, Compl., ¶¶ 4-7, and raised federal and state law claims of false arrest and false imprisonment as to both plaintiffs, id., ¶¶ 26-38, as well as a negligence claim for failure to

---

[2] While the amended complaint is not entirely clear, plaintiffs appear to allege that officers from both the NYPD and Nassau County Police Department were present during the traffic stop. Am. Compl., ¶ 13.

maintain electronic records and negligent and intentional infliction of emotional distress claims only as to Pittman III, id., ¶¶ 39-49. Plaintiffs' amended complaint added Nassau County defendants and clarified the identities of some of the New York City defendants. Am. Compl., ¶¶ 4-14. However, the amended complaint raised only false arrest claims under federal and New York law,[3] eliminating the other tort claims contained in the original complaint.[4] Id., ¶¶ 33-35. New York City defendants brought the instant motion to dismiss on October 1, 2014.[5]

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and draw

---

[3] Plaintiffs allege only one count of "False Arrest" and bring suit under 42 U.S.C. §§ 1983 and 1988. Am. Compl., ¶¶ 1, 33-35. The ad damnum clause, however, requests relief under both federal and state law, seeking damages against the City of New York under respondeat superior, a theory of liability available only under state law. Chimurenga v. City of New York, 45 F. Supp. 2d 337, 344 (S.D.N.Y. 1999). The court thus construes the amended complaint to assert false arrest claims under both § 1983 and New York State tort law.

[4] In anticipation of defendants' motion to dismiss, this court directed plaintiffs to file their last and best amended complaint before September 22, 2014, and warned that "no further amendments of the pleadings [would] be allowed after this date." Dkt. #5. The court thus considers plaintiffs' amended complaint, filed on September 23, 2014, as the final version of their pleading in this case.

[5] As part of their opposition papers, plaintiffs submit the transcript of a deposition taken of Pittman Jr. in state court proceedings. Dep. of Clinton Pittman, Jr. ("Pl. Dep."), attached as Ex. 1 to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem."), Dkt. #16. This deposition is not referenced in the amended complaint, and the court declines to convert this motion to dismiss into a motion for summary judgment in order to take it into consideration. Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (where court is provided materials outside the pleadings in the context of a 12(b)(6) motion to dismiss, it "may exclude the additional materials and decide the motion on the complaint alone or convert the motion to one from summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material."). While the court therefore places no reliance on this transcript in deciding the Rule 12(b)(6) motion, it is notable that Pittman Jr.'s testimony in that deposition appears to concede additional facts supporting the reasonableness of the arresting officers' behavior and undermining plaintiffs' claims. For example, Pittman Jr. testified that the arresting officers "secured [Pittman III] in the [police] car" before removing and searching Pittman Jr., Pl. Dep. at 20; that all but one of the officers "put their guns away while they allowed [Pittman Jr.] to go into [the] glove compartment and reach into [his] pocket to give them [his] driver's license and registration for the car," id. at 21; that Pittman Jr. was never placed in handcuffs, id. at 27; that after Pittman Jr. told the arresting officers that he had previously reported his car stolen but then recovered it, they "talked to [him] for [a] while," and, "after they believed [his] story, they were really trying to calm [him] down because [he] was irate," id. at 26-27; and that the arresting officers tried to get Pittman Jr. to "understand where [they were] coming from," id. at 28.

all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555-56; Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). New legal claims may not be raised for the first time in opposition to a motion to dismiss if they have not been pled in the complaint. Nesheiwat v. City of Poughkeepsie, No. 11 Civ. 7072, 2013 WL 620267, at *3 (S.D.N.Y. Feb. 13, 2013) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)).

**II.    False Arrest**

Plaintiffs allege that defendants "individually and/or jointly conducted an arrest of [Pittman Jr.] without probable cause," causing both plaintiffs "severe emotional pain." [6] Am. Compl., ¶¶ 34-35. As noted, plaintiffs assert false arrest claims under both federal and state law.

A claim for false arrest under § 1983 is "substantially the same" as a claim for false arrest under New York state law. Weyant v. Okst, 101 F.3d 845, 852 (2d. Cir. 1996). Plaintiffs must prove that (1) defendants intentionally confined plaintiffs, (2) plaintiffs were conscious of the confinement, (3) plaintiffs did not consent to it, and (4) the confinement was not otherwise privileged. Jocks v. Tavernier, 316 F.3d 128, 134-35 (2d Cir. 2003) (citing Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)); Harris v. Cnty. of Nassau, 581 F. Supp. 2d 351, 354-55 (E.D.N.Y. 2008). Defendants challenge the fourth element, arguing that the stop of Pittman Jr.'s

---

[6] Although this language in the amended complaint refers only to the arrest of Pittman Jr., plaintiffs allege that defendants were "each instrumental in the initiation and arrest of [p]laintiffs," suggesting that the false arrest claims also apply to Pittman III. Am. Compl., ¶ 34. The court thus construes the amended complaint as raising false arrest claims on behalf of both plaintiffs.

5

vehicle was privileged.[7] Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem."), Dkt. #12, at 4-6.

### A. Probable Cause

The existence of probable cause for an arrest renders such confinement privileged and constitutes a complete defense to false arrest claims under both federal and state law. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Jocks, 316 F.3d at 135; Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999). Probable cause to arrest exists when the officer has "knowledge or reasonably trustworthy information . . . sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. This inquiry is "based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," Jaegly, 439 F.3d at 153, considering the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230 (1982); Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007). "'[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information.'" Alvarado v. City of New York, 453 F. App'x 56, 58 (2d Cir. 2011) (alteration in original) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); see also Colon v. City of New York, 455 N.E.2d 1248, 1250 (N.Y. 1983) ("A party may act with probable cause even though mistaken . . . .").

Here, defendants had probable cause to stop plaintiffs in order to investigate the status of their car. Plaintiffs allege that they were detained as a result of a computer record that mistakenly identified Pittman Jr.'s vehicle as stolen. Plaintiffs do not allege that the arresting officers had any information that the electronic records had not been updated or that the vehicle was not

---

[7] Defendants do not appear to contest that the traffic stop constituted "confinement" of plaintiffs by law enforcement officers. See, e.g., Jocks, 316 F.3d at 135 (defendant who identified himself as a police officer, physically seized plaintiff, and detained him for a period of time may be held liable for false arrest).

actually stolen. Am. Compl., ¶ 34. The fact that the stolen vehicle record was not removed after Pittman Jr. reclaimed his car, however, does not deprive the arresting officers of probable cause when they acted on information from a database indicating that the car was still reported as stolen. Reliance on commonly used electronic databases is generally reasonable and sufficient to establish probable cause. For example, in Apostol v. City of New York, No. 11-CV-3851, 2014 WL 1271201, at *1 (E.D.N.Y. Mar. 26, 2014), arresting officers used a computer database to run the license plates of the plaintiffs' car, and when that system indicated that the plates had been reported stolen, the officers blocked the car and arrested the plaintiffs for driving a stolen vehicle. Although it was later determined that the license plates had not been stolen and that one of the plaintiffs actually owned the vehicle, the court held that the officers' reliance on the computer database records at the time of the stop was reasonable under the circumstances, and established probable cause to arrest the plaintiffs. Id. at *4; see also United States v. Miller, 265 F. App'x 5, 7 (2d Cir. 2008) ("When an officer learns from a computer database . . . that a person is the subject of an outstanding arrest warrant, probable cause exists to arrest that person [even where the warrant turns out to be invalid]."); United States v. Santa, 180 F.3d 20, 27 (2d Cir. 1999) (holding that arresting officer's reliance on a computer database record was objectively reasonable, as officers "did not know, and had no reason to know," that the information was incorrect, and "had no reason to doubt the accuracy of the [electronic records] system generally"). Absent any indication that the arresting officers' reliance on the electronic records was unreasonable or in bad faith, the electronic record indicating plaintiffs' vehicle was still reported as being stolen, though inaccurate, was sufficient to establish probable cause to stop the plaintiffs and investigate the matter, providing a complete defense to claims of false arrest.

    Plaintiffs essentially concede the issue of probable cause in their motion papers,

addressing it only by arguing that "[e]ven if probable cause existed for [p]laintiffs' detention," Pl. Mem. at 17, "larceny of vehicle is not substantially severe to warrant" the arresting officers' conduct during the stop, id. at 8.[8] Plaintiffs argue that the New York defendants "had in [their] possession facts [ ] which would have dissipated any privilege to detain [plaintiffs]," id. at 14, but have not set forth in their pleading sufficient facts to infer that the arresting officers had that information when they initially detained plaintiffs. Rather, this argument itself suggests that there was privilege to detain plaintiffs when the stop was first made. The amended complaint alleges that after Pittman Jr. produced his license and registration and informed the arresting officers that he owned the car but had previously reported it stolen, the officers did precisely what they should have done – verified that the vehicle was not stolen and, absent continuing probable cause, permitted plaintiffs to leave. Am. Compl., ¶¶ 22-23.

Finally, plaintiffs argue, rather confusingly, that Pittman III may assert a claim of false arrest based on the officers removing him from his father's car and placing him in a police car because they were suspicious of Pittman III's "association with [Pittman Jr., a] perceived car thief." Pl. Mem. at 15. There is no allegation in the amended complaint that the arresting officers detained eleven-year-old Pittman III on suspicion of criminal activity. Plaintiffs' suggestion that the arresting officers' failure to "ascertain whether [Pittman III] was a kidnapping victim" gives rise to an inference that he was thus "perceived by the police officers as implicated in the theft of the vehicle in which he was a passenger," id. at 15-16, is not rationally grounded in the facts as pled in the amended complaint. Plaintiffs allege that the officers immediately removed Pittman III from the car, placed him in a police car, and then returned their attention to his father, in order to ascertain Pittman Jr.'s relationship to the car. Am. Compl., ¶¶ 20-21. The only reasonable

---

[8] Plaintiffs' concession of probable cause is made in the context of an unpled excessive force argument, which is addressed in greater detail below.

inference to be drawn from the facts in the amended complaint is that officers removed Pittman III from plaintiffs' car and placed him in a police car in order to facilitate the stop and questioning of his father, Pittman Jr.

Minors detained in relation to a parent's arrest, absent suspicion of criminal activity, are not subject to the requirement of probable cause under a false arrest claim. Graham v. City of New York, No. 08-CV-3518, 2011 WL 3625074, at *5 (E.D.N.Y. Aug. 17, 2011) ("Where a minor plaintiff is detained not on suspicion of criminal activity but, rather, as incident to their parent or guardian's arrest, it is inappropriate to apply the traditional false arrest inquiry to their civil rights claim." (internal quotation marks omitted)). Rather, their detention is evaluated under a Fourth Amendment "reasonableness" standard. See, e.g., Armatas v. Maroulleti, No. 08-CV-310, 2010 WL 4340437, at *11 (E.D.N.Y. Oct. 19, 2010), report and recommendation adopted in pertinent part, 2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010). Here, the arresting officers' behavior towards Pittman III was reasonable and not a violation of his Fourth Amendment rights. Officers removed Pittman III from a potentially dangerous situation and placed him out of harm's way in a police car while they investigated Pittman Jr.'s ownership of the car. The arresting officers may have used adult language and had guns drawn as they approached the vehicle from the outside while the plaintiffs were still inside, Am. Compl., ¶¶ 19-20, but there are no allegations that, after Pittman III was removed from the plaintiffs' car, the arresting officers physically harmed him, continued to point guns at him, directed adult language at him, or placed him in handcuffs. In fact, there are no allegations that the defendants interacted with Pittman III at all during the relatively brief time he was in the back of the police car. While it may have been a traumatic experience for an eleven-year-old boy to witness the events that unfolded, that was a consequence of the valid traffic stop itself, not of any unreasonable conduct

of the arresting officers. The defendants' decision to remove Pittman III from the car while they detained and questioned Pittman Jr. was a reasonable one, and did not violate the minor's Fourth Amendment rights.

As plaintiffs have failed to plead sufficient facts to establish that their confinement "was not otherwise privileged," Jocks, 316 F.3d at 134-35, the federal and state law claims for false arrest must be dismissed.

### B. Personal Involvement of Defendants

Plaintiffs' false arrest claims also fail as to all of the individual defendants other than the arresting officers because they were not personally involved in the incident. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "Personal involvement" includes "direct participation," which has been defined as the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). Additionally, "a police officer [may] be liable for a false arrest that occurs outside of his presence if he 'had reason to know' that such a false arrest was likely to occur." Escalera v. Lunn, 361 F.3d 737, 748 n.4 (2d Cir. 2004) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Finally, a defendant in a supervisory position may be found to be personally involved in limited circumstances where he "learn[ed] of the violation . . . [but] failed to remedy the wrong"; "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue"; or "was grossly negligent in managing subordinates who

caused the unlawful condition or event." Wright, 21 F.3d at 501 (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995).

Here, the only defendants who were personally involved in the alleged false arrest by "direct participation" were the officers who conducted the traffic stop. Plaintiffs allege that former Mayor Bloomberg and former Commissioner Kelly "made or delegated all the policy decisions concerning [p]olicing and were thus directly involved in bringing about the foreseeable consequences of the policies they created for the delivery of police services," Am. Compl., ¶ 5; that John Doe(s) NYPD Technology Officers who designed the electronic database for stolen vehicle records were "reckless or deliberately indifferent" in failing "to create fail-safes in the programs which distribute . . . [information] concerning automotive thefts," id., ¶ 7; and that various NYPD Officers of the 48th and 103rd Precincts "tolerated" or "inadequately supervised or failed to investigate" the "violation[s] of civil rights" occurring in those precincts, and "deliberate[ly] fail[ed] . . . to remove Plaintiff's stolen vehicle report" from the database after it had been recovered, id., ¶¶ 10-12, 26; see also id. ¶¶ 26, 30, 31, 34. According to plaintiffs, all of these individuals were thus "instrumental" in causing the allegedly false arrest. Id., ¶ 34.

Plaintiffs have failed, however, to plead facts from which a jury could reasonably find that any of the individual defendants other than the arresting officers had personal involvement in plaintiffs' detention. None of these defendants physically participated in plaintiffs' detention. The amended complaint sets forth no support for the inference that any of them knew or had reason to know that Pittman Jr.'s car had not been removed from the stolen vehicle database and that he was likely to be erroneously stopped as a result; that they failed to act to correct such information; or that they learned of the erroneous stop but failed to remedy it. On the contrary, it is clear from the complaint that an NYPD employee did investigate the electronic record and

11

ultimately conveyed information to the arresting officers that plaintiff's vehicle should not have been listed as stolen.

Plaintiffs allege, in conclusory fashion, that defendants Bloomberg, Kelly, and "Doe policy makers . . . adopted municipal policies, practices, and customs that have caused the violations" and had "actual or constructive notice of a pattern of constitutional violations [similar to plaintiffs'] and have failed to take action, thereby allowing the continuation of such a policy or custom." Am. Compl., ¶ 27. However, they have failed to plead any facts supporting the contention that the failure to remove plaintiffs' vehicle record from the electronic database was the result of a policy or custom to improperly retain or maintain such records rather than an isolated instance of oversight. Finally, plaintiffs have provided no factual basis for a claim that any of these defendants were "grossly negligent" in managing the arresting officers. Ultimately, while one or more of the defendants may have been negligent in failing to remove plaintiffs' record from the stolen vehicle database, this does not implicate in the asserted false arrest the personal involvement of any of the named defendants other than the officers at the scene. The claims for false arrest against these other individual defendants must therefore be dismissed.

### C. Qualified Immunity

Defendants argue that, even if probable cause were lacking for the stop of plaintiffs' vehicle, the arresting officers would nonetheless be entitled to dismissal of the claims for false arrest on qualified immunity grounds. [9] Def. Mem. at 7-8. Police officers may be shielded from liability for civil damages if their "conduct did not violate [a] plaintiff's clearly established rights, or if it would have been objectively reasonable for the [officer] to believe that his conduct

---

[9] Plaintiffs argue that, because defense counsel "has not appeared on behalf of the individual police officers," the moving defendants may not assert qualified immunity on behalf of non-moving John Doe defendants. Pl. Mem. at 9. Although the court need not reach the issue of qualified immunity given that the existence of probable cause serves as a complete defense to plaintiffs' false arrest claims, it is indeed empowered to dismiss claims against nonmoving parties. See supra note 1.

did not violate [the] plaintiff's rights." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003). Qualified immunity is established where "(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause for arrest." Anderson v. City of New York, 817 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) (internal quotation marks omitted); see also Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). This test for "arguable probable cause" is "more favorable to officers than the one for probable cause." Escalera, 361 F.3d at 743. A qualified immunity analysis should take place at the earliest possible stage of litigation, generally on the basis of the pleadings. MacIssac v. Town of Poughkeepsie, 770 F. Supp. 2d 587, 600 n.7 (S.D.N.Y. 2011).

Even assuming the arresting officers did not have probable cause to stop plaintiffs' car and question Pittman Jr. regarding his ownership of the vehicle, those officers would be entitled to qualified immunity based on arguable probable cause. It was objectively reasonable for them to believe that there was probable cause to stop plaintiffs' car and investigate whether or not it was stolen based on the (erroneous) stolen vehicle record that came up in the electronic database. As noted above, courts have generally found reliance on such a database to be objectively reasonable, and the arresting officers in this case had no reason to question the accuracy of the record indicating plaintiffs' car had been reported stolen, at least not when they initially made the traffic stop.[10] Thus, even if there were not actual probable cause to detain plaintiffs, the officers at the scene of the incident would be shielded from civil liability based on arguable probable cause.

---

[10] Upon further investigation, it became clear that there was not, in fact, probable cause to make an arrest because the stolen vehicle record was incorrect; but the officers acted reasonably and in good faith at that point by, appropriately, letting the plaintiffs leave the scene without making an arrest.

### D. Municipal Liability

In the amended complaint, plaintiffs sue New York City and Nassau County as "local government bodies." Am. Compl., ¶ 4. Even if plaintiffs had pleaded sufficient facts to sustain their false arrest claims at this stage of the proceeding, they have not pleaded sufficient facts to establish that the municipal defendants violated their constitutional rights.

To sustain a claim against a local government entity under § 1983, the plaintiff must establish that the municipality's "policy, custom, or practice caused the alleged injury." Anderson, 817 F. Supp. 2d at 98; accord Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978); Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). Additionally, "the inadequacy of police training may serve as the basis for § 1983 liability" against a municipality, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). A Monell claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice. See Gordon v. City of New York, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing Monell claim where "allegation is unsupported by anything other than the facts of what occurred in his particular case"); see also Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."). A plaintiff must show that the employees' acts were "done pursuant to municipal policy," were "sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware," or if "a

municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Id.

Plaintiffs have failed to plead any facts supporting the inference that their vehicle stop and the non-removal of their vehicle from the NYPD database was the result of any official municipal policy or custom sufficient to impose liability on the City of New York or Nassau County. Plaintiffs allege in the amended complaint that the municipal defendants: "failed to discipline and/or train officers" regarding maintenance of electronic databases of stolen vehicle records, causing "foreseeable violation[s] of the constitutional rights of persons similarly situated to Plaintiffs on a number of occasions," Am. Compl., ¶¶ 29, 31; "adopted municipal policies, practices and customs that have caused the violations" against plaintiffs, id., ¶ 27; and "fail[ed] to maintain, manage, update, upkeep, secure, and restore electronic records . . . result[ing] in frequent seizure and arrest of innocent persons such as Plaintiffs without probable cause," id., ¶ 29. These statements and plaintiffs' opposition papers all focus on the alleged failure of the NYPD 48th Precinct to remove Pittman Jr.'s vehicle from the stolen vehicle records database, and of New York City to properly train the individual defendants to do so. Plaintiffs do not allege, let alone plead facts supporting an inference, that defendant Nassau County should be held liable for this oversight.  Even as to New York City, plaintiffs' claims are not supported by any factual allegations that the erroneous vehicle record was anything more than an isolated oversight. Contrary to plaintiffs' suggestion, Pl. Mem. at 12-13, the fact that Pittman Jr.'s car was not removed from the database, standing alone, does not support an inference that it happened pursuant to city policy or that it is a frequent enough occurrence to constitute an NYPD custom, nor does it suggest that the municipal defendants do not train or supervise officers regarding the maintenance of vehicle records. Plaintiffs' conclusory statements, based

15

only on the claims in this particular case, are insufficient to sustain a <u>Monell</u> claim against defendants New York City and Nassau County.[11]

## III. Other Claims

### A. Excessive Force

Plaintiffs contend in their memorandum in opposition to defendants' motion to dismiss the amended complaint, for the first time in this case, that "the force used in conducting the investigatory stop and the seizure of [plaintiffs] was unnecessary, unreasonable and violent," Pl. Mem. at 7-8, presumably in an effort to convert the grounds of their § 1983 claim from the false arrest alleged in their complaint to an excessive use of force in violation of the Fourth Amendment asserted nowhere in their pleading. According to plaintiffs, "larceny of vehicle is not substantially severe to warrant such use of force, especially when police cars surround the allegedly stolen vehicle"; there was "no evidence to suggest that Plaintiff posed a threat to the officers or others"; and "[plaintiff] was [not] resisting or attempting to evade arrest." <u>Id.</u> at 8. Thus, according to plaintiffs' memorandum of law, the officers' behavior in cutting off plaintiffs' car at the intersection, approaching the car with guns drawn, and shouting "threats and expletives," was excessive. <u>Id.</u> Plaintiffs also argue that the officers are not entitled to qualified immunity on any excessive force claims. <u>Id.</u> at 11-12.

Knowing that the amended complaint would be considered their last and best pleadings, plaintiffs' amended pleading did not add any claims of excessive use of force; rather, the amended complaint <u>dropped</u> claims contained in the original complaint, maintaining only claims for false arrest. Plaintiffs have not sought leave to further amend the pleadings, and may not now

---

[11] A municipality may also be held liable for false arrest under state law on a theory of respondeat superior. <u>Chimurenga</u>, 45 F. Supp. 2d at 344; <u>see also</u> <u>Graham v. City of New York</u>, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013) (collecting cases). However, as plaintiffs have failed to sustain their claims for false arrest against the individual officer defendants, any vicarious state law claims against the municipal defendants must also be dismissed.

16

do so through statements made in opposition briefs. Wright, 152 F.3d at 178; see also Aretakis v. Durivage, Civ. No. 1:07-CV-1273, 2009 WL 249781, at *26 (N.D.N.Y. Feb. 3, 2009).[12]

### E. Other State Law Claims

In the amended complaint, plaintiffs allege that this court has ancillary jurisdiction to hear other claims brought by Pittman III under New York state law. Am. Compl., ¶ 1. The amended complaint also maintains language from the original complaint that seemingly supports state tort claims that were originally raised in that complaint but dropped from the amended complaint (claims for false imprisonment, negligent and intentional infliction of emotional distress, and negligence). For example, the amended complaint alleges that defendants "had a special relationship with [Pittman Jr.] as bailees of his vehicle, which obligated them to him in a way different from their obligation to the public at large," suggesting a negligence cause of action. Am. Compl., ¶ 32. Plaintiffs' opposition papers also contain general assertions suggestive of state law tort claims, arguing, for example, that "negligent program writing by police department technical staff in creating a computer program . . . which had no fail-safes in the protocol for its use for removing vehicles from its lists at the time such vehicle[s] were returned

---

[12] Even if the court were to consider plaintiffs' excessive force claim, it could not be sustained because it is not supported by the facts pled in the amended complaint. The arresting officers' behavior was objectively reasonable based on the totality of the circumstances at the time of the incident, evaluated from the perspective of a reasonable officer on the scene, and balancing the "nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). Plaintiffs allege that the officers at the scene had their guns drawn and were shouting obscenities when they initially approached the vehicle, which they had probable cause to believe was stolen. Plaintiffs do not allege that any other force was used during the stop, nor that they suffered any physical injuries from the defendants' conduct, other than emotional damages. Plaintiffs' claim that the officers were shouting obscenities and otherwise verbally abusing them is insufficient to establish a claim of excessive force as a matter of law. Liriano v. Ice/DHS, 827 F. Supp. 2d 264, 271 (S.D.N.Y. 2011) (collecting cases); see also Harwe v. Floyd, No. 3-09-cv-1027, 2011 WL 674024, at *1 (D. Conn. Feb. 17, 2011) (the Fourth Amendment "does not require . . . police officers to be polite"). Similarly, the fact that the officers approached the car with their guns drawn does not support a claim of excessive force. Cabral v. City of New York, No. 12 CIV. 4659, 2014 WL 4636433, at *11 (S.D.N.Y. Sept. 17, 2014) (collecting cases). The officers' behavior as alleged in the amended complaint was objectively reasonable in light of the circumstances as viewed from their perspective at the time of the traffic stop. Thus, even if plaintiffs were granted another opportunity to amend, any attempt to include a claim for excessive use of force would be futile.

to their owners" caused the plaintiffs' injuries. Pl. Mem. at 14-15.

Defendants argue that any of these other state law claims, to the extent they remain in the amended complaint, are untimely, as negligence actions against a municipality must be brought within one year and ninety days. Def. Mem. at 12. In their opposition papers, plaintiffs argue that Pittman III has "timely claims for pendant state law torts," namely assault and negligent infliction of emotional distress, because they have filed a "late notice of claim" in state court in order to toll the statute of limitations during Pittman III's infancy. Pl. Mem. at 13-14. Plaintiffs then provide threadbare recitations of the elements of these torts and even weaker explanations of how the facts alleged in the amended complaint support such claims.

Having dismissed the federal and state law claim for false arrest, the court declines to rule on any other possible state law tort claims. Notwithstanding the numerous shortcomings and lack of clarity in both the original and amended complaints as well as plaintiffs' opposition memorandum, these state law claims were clearly pled in the original complaint and were equally clearly abandoned when plaintiffs filed an amended complaint, and they may not now be resuscitated in opposition papers. The court also declines to rule on any other state law causes of action now that the plaintiffs' claim giving rise to original jurisdiction in this court, the § 1983 claim for false arrest, has been dismissed, and no other independent basis for retaining jurisdiction over the state tort claims remains. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . ."); see also Keith v. City of New York, No. 11 Civ. 3577, 2014 WL 6750211, at *22 (S.D.N.Y. Dec. 1, 2014) (dismissing pendant state-law claims where judicial economy, convenience, fairness, and comity counsel against exercising federal jurisdiction).

## CONCLUSION

For the foregoing reasons, defendants' motion is granted as to plaintiffs' claims of false arrest, which are dismissed with prejudice. To the extent the amended complaint alleges other claims, those are dismissed without prejudice. The action is therefore dismissed in its entirety. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

                                                                                  __/s/_____
                                                                                   Allyne R. Ross
                                                                                   United States District Judge

Dated:        December 30, 2014
                Brooklyn, New York